LOERCHER and another *v.* CRANDAL.

*(Circuit Court. N. D. New York. December 13, 1881.)*

1. PATENTS FOR INVENTIONS—BUCKLE FASTENERS.
   The reissue of a patent for an improvement in buckle fastenings is not open to objection as to its validity, so far as the question affecting defendant's structures is concerned.

2. SAME—RELEASE—AGREEMENT CONSTRUED.
   An absolute release *in præsenti* to an infringer from liability for the making and selling of patented articles, in conjunction with his contract to pay a royalty for certain infringing articles theretofore made, as a consideration for such release, relieves from all accountability for subsequent infringement until such release be set aside.

3. SAME—COLORABLE CHANGES—INFRINGEMENT.
   A mere mechanical change within the scope of the invention, as attaching the buckle to a separate plate, which must itself be attached to the bottom plate, promotes no useful result, and does not change the nature of the invention.

4. SAME—PRIOR AND SUBSEQUENT PATENTS—EQUIVALENTS.
   When the question of novelty and patentability of features which are equivalents in construction and mode of operation arises, the prior existence of such patented features does not make them equivalents for further features subsequently patented, so as to anticipate the latter, but the subsequent patentee will be *held* liable for an infringement to the extent of the prior invention.

*A. v. Briesen,* for plaintiffs.

*Neri Pine* and *C. M. Stone,* for defendant.

BLATCHFORD, C. J. This suit is brought on reissued letters patent No. 7,129, granted to Charles Schuessler, May 23, 1876, for an "improvement in buckle fastenings;" the original patent, No. 61,628, having been granted to Robert Meyer, as inventor, January 29, 1867, for 17 years from January 19, 1867. The specifications of the reissue and of the original are so variant from each other in language that it is impossible to follow the one in the other. They are as follows:

" Figure 1 is a plan view of my improved fastening, showing it applied to the back curtain and back stay of a carriage. Figure 2 is a longitudinal central section thereof. Figure 3 is an inverted plan view of the shell or case to which the strap is secured. Figure 4 an inverted plan view of the shell or case to which the buckle is secured. Similar letters of reference indicate corresponding parts in all the figures. This invention consists in the employment, in connection with a strap and buckle, of two hollow cases or shells, to which said strap and buckle are respectively secured. That one of the two cases to which the buckle is secured has a bottom plate, to which the buckle is attached by a joint. In the drawing the letters A and B represent two pieces of fabric, or pieces of the back stay and back curtain of a carriage, to which my invention is applied. C is the strap, and D is the buckle, by which strap and buckle the pieces, A and B, are to be held together. E is a case or shell, made of sheet metal or other suitable material, in form of an elongated inverted cup, open at one end and at the bottom. This case or shell is provided with downwardly-projecting pins, $a, b$, which, when they are passed through the fabric or piece, A, seem to fasten the case or shell in place on said fabric. One end of the strap, C, is inserted in the shell, E, and secured thereto by means of the pins, $a, b$, in the manner clearly shown in the drawing. F is another case or shell, also made of sheet metal or other suitable material, but provided at the bottom with a plate, $d$, which forms part of said case or shell, F. At the open end of the case or shell, F, the buckle, D, is attached by a joint to the plate, D, as shown. By means of downwardly-projecting pins, $e, e$, with which the case or shell, F, is provided, the same is fastened to the fabric or piece, B, in line with the case or shell, E, as shown, so that the strap, C, can be readily buckled and its loose end then confined in the case, F, as clearly shown in figure 2. If desired, the outer end of the case, F, may also be left open, so that

" The nature of my invention consists in the employment of two metallic cases, one of which acts as a covering for the end of the strap which passes into the buckle, and it provided with pins, which pass through the leather or straps to which it is fastened, and two perforated plates, to one of which the buckle is attached by a joint, the other being used as a plate to hold the several parts together when the ends of the pins are riveted to it; the other case being provided with pins, which pass through the leather and strap to which it is fastened, and through one metallic plate, upon which the ends of the pins are riveted. * * * I construct my buckle fastening of the usual description, such as iron, copper, or brass, but sheet iron or tin plate I think would be the cheapest and best. In said drawings figure 1 represents a plan view of the fastening, with the strap and buckle in place. It is represented in the position it would occupy if attached to the back curtain and back stay of a carriage. Figure 2 is a back view of the case that connects the strap and holds it in place. Figure 3 represents a back view of the case to which the buckle is attached. Figure 4 is a vertical section through the center of figure 1. The same letters in the several drawings represent similar parts in each. A and B represent either two straps or a piece of the back stay and back curtain of a carriage. C is the case which fastens and holds the straps, E, firmly to the piece, A, by means of the pins, F, G, and plate, M, as shown in the section, figure 4. D represents the case to which the buckle is attached, and into which the end of the strap, E, is slipped after being buckled. K is the buckle. H, II, I, and J, in figure 3, are the pins which fasten it to the piece, B, by means of plate, N, as shown in section in figure 4, to which the ends of said pins are riveted when it is desired to fasten them in place. R is a plate to which the buckle is jointed. The case, C, is also riveted in the same way to the plate, M, which holds them more firmly in place than by the old and tedious way

the strap may be passed through when buckled. The cases or shells, E and F, may be made of suitable sizes and stamped in dies of any ornamental shape or form desired, and can be used on all kinds of straps and buckles. In place of the pins hereinabove specified, equivalent fastening means may be provided. I claim as my invention—

of sewing; and, at the same time, it is a plain and more pleasing ornament to the carriage. If desired, the end of the case, D, may be left open, so that the strap may be passed through when buckled. They may be made of various sizes, from the half-inch size up to two inches, and stamped in dies of any ornamented shape or form desired. They may also be used on straps of any kind, as well as for harness or carriage trimmings. I do not claim the case, D, alone, but what I do claim is—

"1. The case or shell, E, made with an open bottom, and provided with the pins, a, b, adapted to pass through the strap and firmly hold it in place, substantially as and for the purpose herein shown and described.

"2. The case or shell, F, made with the bottom plate, d, and combined with the buckle, D, which is attached to said plate, substantially as specified.

"3. The case or shell, F, made with the bottom plate, d, and with the projecting pins, e, e, substantially as herein shown and described.

"4. The combination of the case, E, and strap, C, with the case, F, and buckle, D, substantially as herein shown and described."

"1. The combination therewith of the pins, H, H, I, J, or the equivalent thereof, and the plates, R and N, as herein substantially described.

"2. The case, C, the pins, F, G, and plate, M, for fastening the end of the strap in place as described."

The plaintiffs claim that the defendant has infringed claims 2, 3, and 4 of the reissue. Prior to June 17, 1878, the defendant made and sold articles like Exhibit No. 1. Since that date he has not made or sold any of them. By and under the agreement of that date he settled and paid for all those articles. Although by that agreement he agreed not to make any buckle loops infringing upon said reissue, and although that engagement, in conjunction with his contract to pay royalty for the articles before made, formed the consideration for his release from liability for the making and selling of those articles, yet the release was an absolute release *in præsenti*, and, even though he may subsequently have infringed, the release must stand till formally set aside, and operates to exclude from this suit all further accountability for articles like Exhibit No. 1, such release being set up in the answer. The defendant admits the making and selling after August 1, 1878, of articles like Exhibit No. 2. The sale of articles like Exhibit No. 4 is also proved. Neither No. 2 nor No. 4 is covered by

the release. The sale of articles like Exhibit No. 3 since the release is not proved. No. 2 and No. 4 being the only structures involved, the only claims of the reissue which need be considered are claims 2 and 3.

Claim 2 requires that there shall be a case or shell like the case or shell, F; that it shall have a bottom plate like the bottom plate, D; that such case or shell, having such bottom plate, shall be combined with a buckle like the buckle, D, and that such buckle shall be attached to such plate. The projecting pins for attaching the case or shell to a fabric do not appear to be an element in claim 2. The specification describes the case or shell, F, as hollow, as made of sheet metal or other suitable material, and as provided at the bottom with a plate, *d*, which forms a part of the case or shell. One end of the case or shell is open, and the buckle, D, is attached to the bottom plate at that end by a joint so as to project outwardly. The other end of the case or shell is either open or closed. The case or shell is provided with downwardly-projecting pins, which start from the bottom plate, and pass through the fabric to which the shell or case is to be attached, and serve to attach the shell or case to the fabric. Equivalent fastening means may be used in place of the downwardly-projecting pins. Claim 3 combines the case or shell, F, the bottom plate, and the pins, omitting the buckle. No. 2 has a hollow case or shell, like F, made of sheet metal, and provided at the bottom with a plate, which forms a part of the case or shell. One end of the case is open and the other is closed. There is a buckle at the open end, but it is not attached to the bottom plate by a joint. It is attached by a joint to a short piece of flat sheet metal, so as to project outwardly. This short piece carrying the buckle is of two thicknesses, the metal being bent to form the joint for the buckle, and is beneath and close up against the lower surface of the bottom plate. In order to secure it to the bottom plate there is a third flat piece of metal, lying longitudinally underneath, which has at its extreme end furthest from the buckle an integral upwardly-projecting pin or fin, which enters a hole in the bottom plate, and is intended to be bent over and down, and clinched inside the shell against the upper surface of the bottom plate. The other end of such third longitudinal piece, at its extreme end nearest the buckle, has two integral upwardly-projecting pins or fins, lying in line side by side, one each side of the center of its width, and extending each from near such center to the outer edge, each of which enters and passes through a separate hole for it through each of the two thick-

nesses of the short piece which carries the buckle, (the two holes for each pin or fin being coincident,) and then enters a separate hole for it in the bottom plate, and is intended to be bent over and down, and clinched inside the shell against the upper surface of the bottom plate. Thus, when the pins or fins are in place and clinched, the buckle is held firmly, and the structure becomes a unit.

No. 4 has a hollow case or shell made of sheet metal, and provided at the bottom with a plate, which forms a part of the case or shell. Both ends of the case are open. There is a buckle at each end, not attached to the bottom plate by a joint. A buckle is attached by a joint to each end of a separate longitudinal plate, which is longer than the bottom plate. Each buckle projects outwardly. Such separate plate is, for a distance at each end of it, of two thicknesses, the metal being bent to form the joint for the buckle, and is beneath and close up against the lower surface of the bottom plate. In order to secure it to the bottom plate there is a third flat piece of metal lying longitudinally underneath, and somewhat shorter in length than either such separate plate or the bottom plate, which has at each extreme end of it two integral upwardly-projecting pins or fins, lying in line side by side, one on each side of the center of its width, and extending each to the outer edge, each of which enters and passes through a separate hole for it through each of the two thicknesses of such separate plate which carries the two buckles, (the two holes for each pin or fin being coincident,) and then enters a separate hole for it in the bottom plate, and is intended to be bent over and down, and clinched inside the shell against the upper surface of the bottom plate, there thus being four of such pins or fins. So, when the pins or fins are in place and clinched, the buckles are held firmly, and the structure becomes a unit.

It is manifest that there is involved in claims 2 and 3 of the reissued patent the idea of a hollow case, with a top, two longitudinal side plates, and a bottom plate, all forming a unit and a case, the case having such bottom plate, being, in claim 2, combined with a buckle attached to the bottom plate, and having, in claim 3, the downwardly-projecting pins. The buckle is secured to the case, and it is so secured by being attached to the bottom plate. The strength of the structure, as a whole, composed of top, sides, and bottom plate united in one, is availed of to hold firmly the buckle through the attachment of the buckle to the bottom plate. The combination, in claim 2, of the case of which the bottom plate forms a part with the buckle, is effected by attaching or jointing the buckle directly to the

end of the bottom plate. A pull on the buckle cannot result in displacing anything, if the buckle does not break, without displacing the structure as a whole. In claim 3 the case of which the bottom plate forms a part has the downwardly-projecting pins, and when by means of them the structure is fastened to a fabric, no pull on the pins against the structure can displace any part of it without displacing the whole of it. In both claims the fact that the bottom plate forms an integral part of the case is a leading feature. In the light of the foregoing suggestions an examination of No. 2 and No. 4 shows a hollow case, with a top, two longitudinal side plates, and a bottom plate, all forming a unit and a case. The case having such bottom plate is combined with a buckle. The buckle has, for all practical purposes, the same relation to the bottom plate as if it were attached to it. The combination of the case with the buckle is effected by means of the plate carrying the buckle, and of the lower flat piece of metal and the pins or fins on the latter. The plate which carries the buckle, being an additional separate plate, must be fastened in some way to the bottom plate of the case. The severance makes the reunion necessary, and promotes no useful result. It is a mere mechanical change within the scope of the principle of the Meyer structure. When the parts are put together, and the pins or fins are clinched, the case or shell made with the bottom plate is combined with the buckle, and the buckle is as much attached to the plate for all the practical purposes of the structure as is the buckle in the Meyer structure. The strength of the case, as a whole, composed of top, sides, and bottom plate united in one, is availed of to hold firmly the buckle through such combination of the case with the buckle. A pull on the buckle cannot result in displacing anything, if the buckle does not break, without displacing the structure as a whole. When the pins or fins are clinched, the case of which the bottom plate forms a part is provided with downwardly-projecting pins, which start from the bottom plate, and, after passing through the buckle plate, pass through the fabric to which the shell or case is to be attached, and serve to attach the shell or case to the fabric. The fact that the pins are integral, with a longitudinal piece of metal on the other side of the fabric, makes no difference. They are the projecting pins of Meyer in that, when clinched, they project from the bottom plate towards and through the fabric, and fasten the combined case and buckle to the fabric. When the structure is fastened to a fabric no pull on the pins against the structure can displace any part of it without displacing the whole

of it. The same results follow as in the Meyer structure, from the fact that the bottom plate forms an integral part of the case.

The defendant has a patent granted to him July 23, 1878, No. 206,298, under which he claims the right to make No. 2 and No. 4. They are described in that patent. That patent claims (1) the third flat piece of metal, with its integral pins or fins in combination with the separate buckle plate, having holes in it corresponding with the pins or fins, for the purpose of securing the buckle in proper relation to the case; (2) the combination with the third flat piece of metal, having its integral pins or fins, of the seperate buckle plate and the case, with its bottom plate, both of the latter having holes in them coincident with said pins or fins, when secured to a curtain by means of such interior clinching of the pins or fins. It may be that these claims may be sustainable for their specialties, notwithstanding prior structures. But still, No. 2 and No. 4 embrace points of construction which are the equivalents of the points of construction claimed in claims 2 and 3 of re-issue No. 7,129. Beyond that, what is patented by No. 206,298 is only an improvement, still involving the principle of what is claimed in said claims 2 and 3. On the question of infringement, features of construction may well be and are often equivalents of prior patented features, because involving their construction and mode of operation, though going further and containing their own patentable features, and for that very reason, when the question of the novelty and patentability of such further features comes up, the prior existence of such prior patented features does not make them the equivalents of the further features so subsequently patented, in such sense as to anticipate the latter. An illustration of this is found in the case of *Crandal* v. *Walters*, 9 FED. REP. 659, a suit brought on the Davis patent, decided herewith.

The validity of the reissued patent is attacked. The drawings of the original and the reissue are structurally the same, although the lettering is changed, and figures 2, 3, and 4 are differently numbered in the two. Criticism is made on the facts that the original speaks of "metallic" cases and the reissue of "hollow" cases; that the original speaks only of metallic materials, while the reissue speaks of "sheet metal or other suitable material;" that in the original the pins are said to be riveted to the lower plate, N, after they have passed through the curtain and through the plate, N, so as to fasten the buckle plate, R, to the curtain, and claim 1 of the original is for the combination of the case, and the pins or their equivalent, and the

plates, R and N; while in the reissue the plate, N, is not lettered in the drawings, and is not mentioned in the text or in the claims, and the statement in the reissue is that the case is provided with downwardly-projecting pins, which, when they are passed through the fabric, serve to fasten the case in place on the fabric. Assuming that Meyer was the first to make a case with a bottom plate, forming part of it, combined with a buckle attached and jointed to said plate, and furnished with pins capable of attaching the structure as a whole to a curtain, it is immaterial whether the plate, N, is used or not, or whether the pins are clinched on that plate or on the curtain, or whether the pins are of such large dimensions that they have to be clinched by hammering their ends, or of such small dimensions that they can be clinched by bending them over even with the fingers, so long as the pins project downward from the bottom plate of the case, and go through the fabric and are clinched on the other side of it. This reissue, No. 7,129, was before Judge Wallace in this court in the case of *Schuessler* v. *Davis*, 13 O. G. 1011.

He there says:

"The description, as well as the drawings and model, accompanying the original patent clearly point out the invention claimed in the reissue. The improvement consists in a compact device embodying a loop bottom plate, and buckle, to be attached to a strap by rivets or an equivalent fastening. In my view the valuable feature of the improvement does not consist in the method by which the case is fastened to the strap, but in the case itself, as forming a loop and buckle combined, and its adaptability to being fastened by various methods to the strap. In the original patent the claim did not cover the combination of the buckle with the case, or, speaking more accurately, with the bottom plate of the shell of the case, but was limited to a combination of the pins or rivets with the case. It was the object and the proper office of the reissue to correct this omission so as to protect the patentee to the full extent of his invention."

The defendant's structure in that case was not the same as the defendant's structure in this case, but consisted of a metallic case with pins or lugs integral with it and projecting down from it, and of a plate underneath, with a buckle jointed to each end of it, and projecting beyond the end of the case, the fins passing through slits in the plate and then through the curtain, and being clinched by bending them over on the other face of the curtain. Such a structure was held to infringe claim 2 of the reissue. I do not think the reissue is open to objection so far as any question affecting the defendant's structures, No. 2 and No. 4, is concerned.

On the question of novelty several prior patents are set up in the answer. Only one of them is introduced, No. 49,309, to Cyrus W. Saladee, August 8, 1865. In that there are two modifications: in one the buckle is not connected to the plate; in the other the connection between the buckle and the plate is rigid and without a joint. In the Meyer structure the buckle is attached to the plate by a joint.

Five other prior patents were introduced by defendant. None of them are set up in the answer. They are as follows: No. 26,013, to Lucius C. Chase, November 8, 1859; No. 39,217, to Frank Douglas, July 14, 1863; No. 44,554, to George Purple, October 4, 1864; No. 47,594, to Cyrus W. Saladee, May 2, 1865; and No. 47,765, to Ebenezer Brown, May 16, 1865. In Chase the buckle frame is rigidly secured and not jointed. In Douglas the buckle frame is not connected with the loop by the bottom plate. In Purple the buckle frame carrying the tongue is not jointed, but the tongue has a rigid fastening. In Saladee, of May, 1865, the Meyer structure is not found, nor is it found in Brown. Besides the features above mentioned as to Chase, Douglas, and Purple, the structures in them would not suggest the structure of Meyer. As to the parol testimony in regard to prior structures by Moore and Davis and the defendant, it must be held that in view of the construction given to claims 2 and 3 of reissue No. 7,129, and of what the invention of Meyer has been defined to be, nothing is shown making out a satisfactory anticipation of said claims.

I think the suit is properly maintainable in the names of the plaintiffs as surviving members of the firm composed of themselves and Schuessler, and that a decree should be entered for the plaintiffs, as to claims 2 and 3, for an account and a perpetual injunction, with costs.